Good morning. Good morning, Your Honors. Timothy Coates on behalf of the City of Los Angeles. We submit that this case presents an issue of first impression, certainly for this court and we think for all the circuit courts, which is the extent to which the ADA Title II somehow preempts state law claims for contractual indemnity. We believe that applying basic principles of preemption that these claims are not preempted and that the district court erred in finding preemption in this case based, I think, on a line of authority that has kind of gone off the rails in terms of preemption analysis in general. Counsel, we're familiar with the Fourth Circuit case, but let's talk about some basic principles here. One of the arguments that the Fourth Circuit case makes suggests that a complete indemnity as opposed to a contribution basically lets the obligated party under the ADA off the hook. So I would ask you, in this particular case, given the contract or contracts in question, if you're successful in getting the contractors to pay a contribution, what is the city left with in terms of responsibility and liability under the ADA? Well, first of all, the city is ultimately responsible to the plaintiff in the first instance, as we point out. I mean, the plaintiff, the person who needs the remedy gets remedy. They get remedy damages. They get injunctive relief. We've got to pick. Again, just to make my questions not so clear. Correct. Let's say there's a matrix. There's 100 percent of liability under the ADA. And if you want to offload a portion of it to the people that you believe caused the problem for failure to comply with the ADA, what portion of the 100 percent would you be left with for the cities responsible for it if your opponents were saddled with a contribution toward correcting some other portion? I think that would be determined in the state court lawsuit. The provisions we cite under the California Civil Code say that whatever indemnity provision we have in a contract with someone who's a designer or a contractor, we are always liable vis-à-vis them for our own fault. I'm trying to get a percentage in mind. In other words, are you talking about just a theoretical overall responsibility, or you're saying, well, you've got these people involved, but they only handled 60 percent of it, and we were stuck with the balance? You can have absolutely. Or they could say that, look, we told you we weren't sure that this was compliant. You needed to inspect. You didn't inspect. And that's what gets fought out in the state court lawsuit. But I submit that the purpose of the ADA is not served by essentially precluding us from being able to assure compliant facilities in the first instance because we don't have any stick over the contractors that we have to rely on. Let's assume for a moment that, let's say bathrooms, whatever it is, say there's bathrooms along a line and that you contend that 100 percent of the failure to comply with the ADA is the responsibility of contractors. Would that be sufficient to avoid any kind of preemption here because you just hypothetically have the overall responsibility? I think it still would because I don't think it stands as an obstacle to congressional purposes for two reasons. The first is, again, we're always liable in the first instance to the plaintiff. They get damages, they get the injunctive relief that we have to fix it. We're ultimately responsible. The second part is if the larger congressional purpose is to make sure that you have compliant facilities, that interest is served by us allowing to hold the people that ultimately have to provide that. I mean, we're not in the building business. We're in the public entity business. We by nature have to rely on other people who are experts to bring us to do compliant facilities. And so if you want those built correctly in the first instance, you have to hold those contractors potentially liable for their own fault. Otherwise they have no incentive. They don't have that stick over their head that will make sure that they give us what we're bargaining for, which is we want compliant facilities. We don't want to get sued. The city's position that if you can't seek contribution from contractors, then in effect you can't comply with the law anyway because you couldn't build anything because you don't know how to do it. You have to contract out to other people to do it. Well, you contract out, but you have no assurance, no stick over the people you're contracting out, that you're going to get the compliant facilities. That's correct. I guess I want to shift the emphasis just a little bit. I'm trying to, if you will, make our law like the Fourth Circuit law. It seems to me that the Fourth Circuit is suggesting that compliance with the ADA is non-delegable and the owner cannot insulate himself from liability in regard to the premises owned by him and managed by him by relinquishing the responsibility preventing the discrimination to another party. And then having said that, they said, so no preemption, no way to cause another party to pay. That's the way it is. All of those clauses on preemption are out. If I apply that to this case, where do I get myself? I think we still have our claims for a contribution under the California statutes, which, again, always make us responsible. In the Fourth Circuit, one could have argued contribution, but the problem was that in that case the owner wanted to shift all responsibility to the architect. The owner wanted to do everything as much as say, okay, pay up, and the Fourth Circuit says, no, don't pay up. It's not something you can do here. The owner is responsible because that's what the ADA wanted to happen. Well, in the Fourth Circuit case, remember, they tried to bring a contribution claim, and the district court said too late. We're not going to let you apportion liability at this point. It's too late. It's going to change the dynamic. And so the Fourth Circuit doesn't reach the contribution issue, but I do note that the case that it cites, its own Fourth Circuit case, Baker-Watts, which is an SEC case, you remember, the Fourth Circuit says, well, contribution is different if that's allowed under state law. You may still have your contribution claim, and I think that's where we are today. Let me go one step further. As I read this record, and I've got out your complaint, every indication in this record suggests that the extent that the appellee's own actions give rise to liability is 100%, which is the same result as equal rights. So then why shouldn't I dismiss the complaint? Because several reasons. I mean, if I read your complaint, and I'm just reading what you said in your complaint, I'm trying to say, what did they try to do here? The declaratory relief. You want me to read that to you? By reason of the matters herein, the city seeks a judicial determination of its rights and duties as to whether they're obligated to defend and indemnify and hold the city harmless, and in the event plaintiffs obtain a judgment, they will be entitled to indemnification. So, again, here we are, 100%. Although the civil code provisions that we cite that talk about identification agreements between public entities and public contracting with contractors and with designers make it clear that when you're talking indemnity in California, you're never relieved of your own fault. There's always an allocation. You can require the people you contract with to be responsible for their fault. And so they'll couch the indemnity terms under California law. It's qualified by, in that context. That you don't cite here necessarily in your complaint, that's how you're getting out of this? Well, we're required, if we go to state court, the civil code provisions reply. They provide the scope of indemnity under California law, whatever our agreement is with the contractor and with the designer in that case. It can never go beyond that. I'm just saying that the term indemnity also includes contribution. It's the old line, all contribution is a form of indemnity, but not all indemnity is contribution. What do I do with independent living center versus L.A.? I think independent living center is dead wrong in its analysis of preemption. I mean, the court first says that preemption does not apply to disability discrimination statutes. And I think that's just dead wrong. The Supreme Court has said multiple times that the presumption against preemption applies in every case. However, it applies with particular force in those areas in which the states have traditionally legislated. And I think there's another error in saying, hey, the states haven't legislated in the area of disability discrimination. And I think that's not really tenable. I mean, the Supreme Court, I think, recognized in the Garrett case, and it cited a congressman who said the states were way ahead of the federal government in legislating with respect to disability discrimination. And I think we note that California had disability discrimination statutes going back at least 1976, maybe earlier. And so the presumption is that Congress knows this is an area in which the states legislate. I mean, I can understand the idea of contribution, and I can understand that that does only put you on the hook for what you've done. My worry is when I read your complaint, you really don't want contribution. You want 100 percent reimbursement for any judgment assigned against you in this case. And that seems to me doesn't have a contribution effort in it. That's my worry in trying to make the Fourth Circuit case apply equally in our circuit, so we don't have the Supreme Court thinking about this. No, I take the court's point on that, but what I'm saying is that whatever the state claims are, what we're asking for, they're governed by state law, and state law are those two civil code provisions that say when we get to duke it out in state court, each side's going to be arguing what its share of liability is, why I'm responsible, why you're responsible. That's what happens in those cases. I understand your argument, but I don't think you're really responding. If you'd really wanted a claim for contribution pursuant to state law, if you'd really wanted that, you may still be in. But it didn't seem to me that's what you want under the complaint you filed. Well, I think the point remains... Did you say you wanted contribution in the complaint you filed? We said we wanted indemnity, but again, I think it goes back to my point. I don't want to talk in a circular manner, but all contribution is indemnity. All indemnity isn't contribution. I mean, there are different levels of indemnity. There's total indemnity. There's partial indemnity, and that's essentially what contribution is. There are various formulas for contribution, and I do think that's the distinction that the Fourth Circuit in the Baker-Watts case on SEC drew. Well, I read Baker-Watts, and if I had a contribution claim in there, I'd have thought, Boy, they read Baker-Watts. It didn't seem to me you'd read Baker-Watts until we got to this case, and now you're coming up with a resurrection, which doesn't help your complaint. Well, but even if that's true, the complaint's capable to state a claim under state law or to more refine the claim under state law, and you grant leave to amend. Now, bear in mind that Judge Otero... I'm not going to grant the leave to amend. Well, I am saying, though, that under California law, our indemnity rights are defined by California law. They can't be greater than those civil code provisions. Counsel, can I just interject because I want to try to understand what my colleague and you are talking about here? He's referring to your complaint as indemnity. Are the defendants in this case the only people who were involved in the construction projects that are the subject of this suit? No, there are various other defendants. Okay, so if you have a project and you have, hypothetically, you have 100 contractors and you sue five of them and you ask for indemnity, and the reality is, under contribution law, you're asking for a contribution because you can't get from five an indemnity for what everybody did. Correct. You're simply asking that these folks, based on your claim, they failed in their portion of the contract. Not the whole thing. Correct. But it's an indemnity from them. But in technical terms, it is a contribution in light of the entire project. The ADA wants to be sure that somebody is responsible, wants to be sure, in this case, the city is responsible. And the fact that you can hold or try to hold a contractor or contractors who did not do what you said they had agreed to does not in any way lift off the burden that you have or the role of other contractors. Correct. Is that fair? That is correct. Okay. That is correct. And couldn't you also refer, your complaint is based on the contract. Correct. And the contract, I'm looking at the language, it seems to be more contribution-like language than indemnity-type language because it talks about to the extent that the third-party defendants are liable, they have to reimburse the city of Los Angeles. Correct. It's drafted in light of the civil code provisions. And once the third-party complaint was dismissed, did you ask the district judge for leave to amend? I don't recall if we expressed yes. I know the district court's order addresses that because he said, I would only grant you leave to amend to alleged contract claims unrelated to the services under the ADA. Why should I do that? Because then I'll just dismiss for supplemental jurisdiction lack because you're not related to the federal question. Well, it was my understanding that what he said, I'll let you amend, but it can't deal with this indemnification. Correct. And so I don't know that there was a way for you to say, I want to amend for that because he just said no. Yes. But he was interpreting the cases we have in front of us and trying to see whether it worked. And he said they didn't want anything but indemnification. I'm not letting them have it. But I just wanted to make sure I understood the record. Thank you, Your Honor. Thank you very much, counsel. We'll hear argument. Now, you gentlemen are dividing up your argument. Is that correct? Yes, Your Honor. How are you going to do that? Good morning, Your Honor. My name is Robert Knight. I'm going to represent Tudor Perini this morning. And my able colleague representing ACOM will split the time. Okay. So my intent is to try to keep an eye on the clock when I reach about seven, eight minutes. You know, of course, it never really works. So you have an agreement with each other and I kill each other or anything like that? Well, there won't be any killing, but we'll do our best. Okay. All right. That much I can promise you. Go ahead. We've tried to divide it up appropriately, but I'm going to address a couple of the issues that were first raised by counsel. The reason that they never brought a state law claim or amended their lawsuit or attempted to file a claim in state court for anything unrelated to indemnity is because this project was completed in 2005. And on the basis of the record, there was no statute of limitations ability for them to file any further claim. There was no statute of limitations ability for them to file a claim on the primary contract violations if any were done. The City of Los Angeles is a complex entity with building departments, and they build hundreds of buildings, projects, infrastructure. They are not some amateur out there in the middle of nowhere that really relies on the contractor's incompleteness. The statute of limitations is run as to everything else under the contract. I would argue it was run under the indemnity under the period of repose. I understand. But that's not in front of us. That's not in front of you. But it's undisputed that the project was completed in 2005, and they didn't try to file this action until 2015, ten and a half years later. So while that was never decided by the district court because of the preemption issues that were decided under independent living, the fact remains that there was no way they could have filed a primary contract claim. And in fact, the allegations, if you look at the complaint, are about handrails, ramps, things that were open and notorious that the city could have inspected and, in fact, maintained for ten years. It is one of the reasons that the ADA and its public policy purposes puts the onus on the public entity or the owner-occupier of the property in this case. That gets further down into the weeds, though, and I get your point. But it seems to me the question here is a threshold question, and that is, is there an ability on the part of a city in this case to bring a claim for what, in California, what people would call contribution slash or indemnity, or is it barred altogether under the ADA? The Fourth Circuit, in I think a spectacularly badly written opinion, has confused issues a bit because it does not offload the responsibility of the city in this case if they're permitted, again hypothetically, to go after the people who perform the work. So setting aside the statute of limitations question for a minute, if there are more contractors involved, and I don't know whether there are or not, he said there were, but say there were ten altogether, a hundred, whatever, and the city sues three, four, five, in what way is the city, if you will, relieved of its responsibilities under the ADA by being able to bring a lawsuit against the contractors? Well, let's just talk in reality for a second. What happens in these kind of cases is they bring a case, then the contractor brings a case against all the subcontractors. Of course. So you end up with 20 people in these cases. Of course. They are relieved of the responsibility because they don't have any risk, and that was the intent of Congress. Congress said when enacting the ADA, and I'd point out when the ADA was enacted in 1990, and then essentially reaffirmed or greatly amended in 2008, it was voted on in 1990 by 403 members of the Democratic House. Seventy-six members of the Republican Senate signed by a Republican president. It was a bipartisan bill negotiated for many years. It was a well-thought-through comprehensive scheme. Okay. Well, let's say all that's right. Let me back up. There was something you said. It seems to me Judge Smith has hypothecated because I didn't find it in the record. I'm not hypothecating. That's a financial term. I'm not doing that. Anyway, what he's done is he's put together some other contractors they could have sued. What you're really saying is if there are anybody else they could have sued, they would have been your subcontractors, right? No, they could have sued their construction managers. They could have sued any number of other people. I just wanted to make sure I understood what you said. But even if that's true, the city still gets sued by people who say they don't have access. We have a case in San Francisco right now dealing with all kinds of streets and roads and highways involving a variety, maybe hundreds of potential contractors, but the city gets sued. And if the city of Los Angeles gets sued, it doesn't matter who the contractor is or whether the statute of limitations has run if it's not functioning, if the people in a wheelchair or something can't get access, the city pays. It's not relieved in any way of its ADA responsibilities by being able to sue a contractor for something that was, say, handrails that weren't put in place. I would argue that they're 100 percent relieved of responsibility. Why? Because they get to turn around and collect all the money back. Let's take your statute of limitations point. The statute of limitations is over. They get sued. This is handrails there for 100 years. They get sued. They can't sue you. The statute of limitations is wrong. I would argue to you that Congress's intent was to put the onus on the owner-operator to keep their property maintained within the ADA. If they wanted to, they could have, right as the project was completed, before they returned the retention funds, before they closed out the contractor, had their building department inspect the property and make sure it was up to the standards that they wanted. That was their obligation and was their obligation to maintain it for the last 10 years. They failed to do so, allegedly. They were sued. They ended up settling the case. If they were allowed to turn around and recollect the money back from my clients or a colleague's client, they have no risk. Why would they ever have to maintain the property? Why do they care whether the sidewalk works or not? Well, it would turn on who's responsible for the violation. If the violation arose from a failure to upkeep, then the city would try and collect from you, and you'd win because it would be the city's fault. But if the violation arose from the initial design, then maybe the city wins. Or if the violation arises in part from the original design and in part from the failure to upkeep, the city would win half and your client would have to pay. And I would argue under the Northwest case, Congress could have provided that right if they wanted to, but they didn't. They explicitly did not put that in the statute. Who cares? Congress didn't provide that right, but Congress allowed for state law to also operate, and state law provides that right. Because the Supreme Court of the United States has taught us in Northwest that we shouldn't read into the ADA or any comprehensive statute. That's not the city's argument. The city is not making an implied indemnification right under the ADA or the Rehab Act. The city is basing its cause of action against your clients and counsel's clients based on the contract. Primarily, but not exclusively. Just a minute. I think you need to think about his question because I think that if you read your contract, you're not going to indemnify the city on anything the city did. That's not true. That's what the contract is. My contract is different. Your contract with them is you're going to indemnify them as to your negligence. That's not the way my contract is. Read the language. Tell me why that isn't so. Let me pull it out here, Your Honor. And I would say my contract is a little bit different than counsel's contract because my contract has the language, which is 12.0, says that we will hold the city harmless from any and all costs, liabilities, damages, or expense, except for the sole negligence and willful misconduct of the city. And under that language, if we're 1% responsible, we're 100% responsible. It doesn't have the contribution language that perhaps the architect's contract has. The contractor's contract under Section 12.0, and it's quoted in our brief, it's very explicit. It says the sole, unless it's solely negligent or willful, we're responsible. And that's why they didn't sue for contribution. You're missing part of the language. You're citing the part that says except for the city's sole negligence, but you're missing the part that ties the liability of your client to damages that are sustained as a proximate result of what your client did. So you're not responsible for what anybody else does. Your client's just responsible for what your client has done. Well, there's an or there. So it says also sustained in or on any property, including the property of the contractor, or then it has the other two provisions that you just quoted. And they didn't sue me for a contribution. They didn't sue me for some partial. As your Honor has pointed out, they've sued for 100%. And there's absolutely no language in their complaint that suggests that they're suing for any approximation of some partial indemnity or contribution. Is that implied under California law? I would disagree with that. And, in fact, some of the statutes they cite were enacted after this contract. So I would ask the court to take a look at that. I would have thought that was really, really basic construction law from way, way, way, way back. Whatever the language you want to use, an indemnity, a contribution is an indemnity. It's a question of how much. They didn't file any lawsuit seeking that or turn around and try to file in the state court. I believe I should turn the podium over if it pleases your court. I think you probably better because he's looking pretty ferocious.  Thank you, counsel. Appreciate it very much. Good morning, your Honor. Good morning. Noel McCauley appearing on behalf of ACOM. The first thing I would like to address is the concern about indemnity versus contribution. This is not and can never be construed as a contribution claim. Not only is it not pled that way, not only was leave to amend not sought, your Honor, but if you examine the language, for example, Tudor's contract says, relating to acts or events pertaining to or arising out of this contract and has another provision saying that Tudor will be solely negligent. In my case, the language is somewhat ambiguous, but I am confident that the city will maintain that even a 1% finding of fault or a triggering event is sufficient to hold us entirely responsible for all damages claimed. Let's just say that's true. I don't know whether you heard what I said to your co-counsel a minute ago, but the reality is under the ADA, the city maintains an ongoing responsibility. If it doesn't maintain it correctly, if something falls off, somebody falls, somebody has trouble navigating something, the city is liable under the ADA. The question is whether the city basically, when it contracts with somebody, has to just say, you know what, it doesn't matter what kind of job they do, we can't sue them because of the ADA. Some people are reading this Fourth Circuit case that way, so let's just say hypothetically, and I know you guys would never do this, but let's just say that you did a terrible job. You and Tudor just did a terrible job. Everything related to the ADA was completely wrong. Under your analysis, they couldn't sue you because of your analysis of the Fourth Circuit case. That's nonsense. How can that possibly be what Congress intended? That is not our contention, Your Honor. Okay, what's your contention? Our contention is you're the owner, you're the occupier, you have an immediate obligation to ensure on a strict liability basis that this meets the requirement. For 10 years you've been in possession. You're the person that's the best person able to know what's going on. And that's an argument for the city, is it not? Because, of course, the city is responsible for maintaining it, and if they don't do it, then they're responsible, you're not responsible. Well, the city's position is clear. We contracted to have it designed and built. You're 100% at fault because we told you to build it and design it that way. So, therefore, by definition, 100% of their fault is sought to be shifted. There's no ifs, ands, or buts about that. It is an attempt. It has the effect of shifting liability. Would you agree that the city could bring a contribution claim against ACON? I believe that the city could maintain a contribution claim had it brought it. Okay, so the city had asked for leave to amend to bring a contribution claim. The city says, fine, we can't bring an indemnification claim. We want to bring a contribution claim. Leave should have been granted, right? No, Your Honor. I believe that had the city been proactive, as the entire purpose and objective of the statute is to ensure that it is, had it determined, as it was in the perfect position to do so, that there were issues, it could have brought a state law in state court claim for breach of contract or anything else subject to the whole penalty of defenses and other provisions that would have effect. Didn't they do that with a third party claim? What's that? Why didn't the third party claim fit that bill? That's what they did. The third party claim, Your Honor, is an indemnification claim. Right. Rather than a non-indemnity breach of contract claim or court claim, that would be a separate thing. They would have brought that in state court based upon their analysis and discovery. Why would they have to bring it in state court? Why can't they bring it as a third party claim under the supplemental jurisdiction in federal court? Well, Your Honor, that raises the whole issue of the metastasization of this case into a wholly ungodly mess. Instead of having one ADA plaintiff. That's a religious claim. Going from one ADA plaintiff against the owner-occupiers, you're now going to go into dozens, scores, perhaps even hundreds in some cases, of defendants and cross-defendants. You're going to take this and convert this into something which is unpalatable and clearly in violation of what the Congress intended to have. Let me ask you, just follow up on that. There is, of course, as you gentlemen know, the presumption against preemption. That's just an ongoing principle. Why doesn't that apply to Title II in Section 504? Well, the presumption does apply. It is one of a number of guiding principles that are examined in doing a preemption analysis. But as with every rebuttable presumption, it is subordinate to the intent of Congress. It is subordinate to a conflict preemption analysis. Does this provide an obstacle to a fundamental objection, objective, or purpose? And if we don't think it interferes with the ADA's intention to hold the city liable, then you lose, right, on the preemption issue? Correct, Your Honor. If the court concludes that there is no conflict preemption available, that it provides no obstacles to the purpose and intent of Congress, and it doesn't provide an impermissible interference with the methods employed and allowed and contemplated by the ADA in similar statutes, which it does, then, Your Honor, we would lose on conflict preemption. Okay, on that happy note, we thank you for your argument, and we'll let them do a rebuttal here. Thank you. You gentlemen really are good lawyers, and we do appreciate it. Thank you very much. I don't have much to add beyond what I said before, and I think I have pretty much exhausted my time. The only thing I would say in terms of adding complexity to litigation, the reality is what happened here, which was the case where the plaintiff settled immediately precisely because we're essentially strictly liable vis-à-vis the plaintiff. Okay. I thought we had more time, but I guess not. I think that's pretty much it. Okay. Thank you, Your Honor. Again, thanks to all lawyers. We sincerely appreciate well-prepared, bright lawyers that helped us decide the case, and as you well know, what we say orally doesn't necessarily mean much of anything, as our spouses occasionally remind us. Might as well. Thank you very much. Thank you. The case just argued is submitted.
judges: M. Smith, N.R. Smith, Feinerman